### KETCHUM v. EDWARDS.

(Supreme Court, Appellate Division, Second Department.    June 23, 1896.)

1. JUDGMENT—DESCRIPTION OF RIGHT OF WAY.
   In an action to compel the removal of obstructions from a right of way, a judgment "that the defendant shall remove all obstructions from the right of way two rods wide extending from the southerly end of the highway near the residence of the defendant southerly to the said three-rod road," sufficiently describes the location of such right of way, as the only thing that remains to be done is to find the particular boundaries thereof. Bartlett, J., dissenting.

2. SAME—COLLATERAL ATTACK—CONTEMPT PROCEEDINGS.
   A judgment cannot be attacked in a proceeding to punish defendant for contempt in disobeying the judgment.

3. REFERENCE—TO TAKE PROOF AND REPORT.
   In an action to compel the removal of obstructions from a right of way it is proper to refer the matter to a referee to take proof and report.

Appeal from special term, Suffolk county.

Action by Daniel W. Ketchum against Frances Edwards to compel the removal of certain obstructions from plaintiff's right of way.    From an order adjudging defendant in contempt for disobeying a decree in favor of plaintiff, defendant appeals.    Affirmed.

Argued before PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Nicoll Floyd, for appellant.
Elliot J. Smith, for respondent.

PRATT, J.    This is an appeal from an order of the special term, adjudging the defendant in contempt for disobedience of a decree made in an action between the parties hereto.    The complaint in that action described the land of the plaintiff and the two rights of way which he claimed.    The defendant appeared in the action by Hon. Wilmot M. Smith, and answered, but before judgment the an-

swer was withdrawn, and judgment was taken by default, in accordance with the claim set up in the complaint. The judgment is in the following form:

"N. Y. Supreme Court, Suffolk County.
"Daniel W. Ketchum against Frances Edwards. Judgment entered May 6th, 1895, at 1 p. m.

"The summons and complaint in the above-entitled action having been duly served on the defendant on the 30th day of November, 1894, and the defendant having duly appeared and answered by Wilmot M. Smith, Esq., and the said Wilmot M. Smith, Esq., having on the 14th day of December, 1895, by notice in writing, withdrawn the said answer, and this action having been duly noticed for trial at the Suffolk county circuit for April 15th, 1895, and having been regularly called on the calendar, and the plaintiff and his witnesses having been examined under oath, and on motion of Elliott J. Smith, the plaintiff's attorney, it is ordered, adjudged, and decreed that the plaintiff, Daniel W. Ketchum, have judgment against the defendant, Frances Edwards, and judgment is hereby rendered in favor of the plaintiff against the defendant, as follows: (1) That the defendant shall remove all obstructions from the three-rod road laid out or hereafter to be laid out in the village of Centre-Moriches, county of Suffolk, the middle line of which is described as follows: Beginning on the west shore of East Senix creek, at a stake in or near the middle of the dock, about 12 rods southerly from Alanson Edwards' house; thence running north, 75 deg. 30 min. west, 14 chains, 20 links, in a straight line, to a stake set up on the east shore of West Senix creek, adjoining late land of Alanson Edwards, deceased. (2) That the defendant shall remove all obstructions from the right of way two rods wide extending from the southerly end of the highway near the residence of the defendant southerly to the said three-rod road. (3) That the defendant, Frances Edwards, is hereby forever restrained from erecting or maintaining any obstruction on said road or right of way. (4) That the plaintiff, Daniel W. Ketchum, recover from the defendant, Frances Edwards, the sum of six cents damages and thirty-five $^{81}/_{100}$ dollars costs of this action.

"Dated April 17th, 1895."

This very plainly describes the location of the two described rights of way, and then locates more especially the one two rods wide that commences at the end of the road near the defendant's house. This judgment was duly served on the defendant, and was perfectly understood by her, and was willfully violated. There could not possibly be any mistake about the road two rods wide commencing at the end of the old country road near defendant's house. The evidence is that she not only obstructed this at its commencement, but built a fence clear across the peninsula from one creek to the other. The proceedings were regular and proper. It was proper to refer the matter to a referee, to take proof and report the same for the information of the court. Code Civ. Proc. § 1015. It is too late to attack the judgment in this proceeding. To claim that defendant was ignorant of the provisions of the judgment, or of its application, or what it described, or the location of the right of way, is puerile, and against the great weight of evidence.

The order should be affirmed, with costs.

HATCH, J. (concurring). The plaintiff brought his action to compel the removal by defendant of certain obstructions which he alleged she had placed in a certain three-rod road laid out by plaintiff and the ancestor of the defendant, and also to compel the removal of certain obstructions placed by defendant in a certain right

of way two rods wide, running from the southerly end of a highway near defendant's premises over and upon her premises to the said three-rod road, through which the complaint alleged plaintiff had a right of way. The complaint did not definitely locate this right of way over plaintiff's land, but stated such right to exist in a strip two rods wide, starting from the southerly end of the highway. An answer was interposed, but before trial it was withdrawn, and judgment was entered by default, and a copy thereof was thereafter duly served. The only point now in controversy relates to the two-rod strip. Respecting this the judgment as entered provided "that the defendant shall remove all obstructions from the right of way two rods wide extending from the southerly end of the highway near the residence of the defendant southerly to the said three-rod road." This judgment was a final judgment, in that it determined that a right of way existed, directed the removal of existing obstructions, and by another clause of the judgment forever restrained the defendant from erecting or maintaining any obstruction on said right of way. Jaques v. Methodist Church, 17 Johns. 548; Beebe v. Russell, 19 How. 283; Johnson v. Everett, 9 Paige, 636; Black, Judgm. § 41. It being established that this was a final judgment and disposition of the merits of the controversy, the question arises, what did it establish? The language of the judgment is that it established the right of way two rods wide, with a beginning and an end. This was not a right of way over two rods of defendant's land, but it was the right of way then existing. Manifestly it is not a broadening of the judgment to say that a particular right of way existed, and, as existing, the judgment established it. It is true that neither the judgment nor complaint particularly described the right of way by metes and bounds, but this in no wise detracts from the fact that the then existing right of way was established. All that remained to be done was to find the particular boundaries of the strip. But this would add nothing to the fact that the judgment established in plaintiff a right of way over it, or militate against the fact that defendant had no right to obstruct it. Nor did there remain any right then in defendant to substitute any other right of way. This view must obtain, as I think, when the nature of a judgment is considered, and the distinction which exists between the rights established by a judgment and the remedy provided for its enforcement. The language used by Mr. Black in his work on Judgments (section 4, p. 8) illustrates the nature and consequence of a judgment·

"The first and most obvious consequence of a judgment is that it establishes an indisputable obligation, and confers upon the successful party the right to issue execution or other process of the court for its enforcement. But this, it must be repeated, is not an integral part of the judgment. The judgment is merely the affirmation of a liability. The right to use the process of the court for its enforcement is a consequence which the law attaches to it."

The language of Judge Read in Kelley v. Stanbery, 13 Ohio, 408, tends strongly to a confirmation of the position:

"The confusion has sprung up from failing to observe the distinction between facts and things to be ascertained preparatory to final decree and facts and things to be ascertained in execution of final decree."

As applied here, nothing further was needed in this judgment to establish in plaintiff a right of way in the right of way then existing.    It might be necessary, when process was issued, to invest him with the right to ascertain the fact where such right of way was exactly situate, but this was not at all necessary to voice the fact which the judgment proclaimed.    St. Louis, I. M. & S. R. Co. v. Southern Exp. Co., 108 U. S. 24, 2 Sup. Ct. 6.    It was no less a violation of the judgment for defendant to obstruct the established right of way than it would have been if its exact metes and bounds had been given.    Plaintiff alleged the obstruction of the right of way and the invasion of his right.    The court necessarily said, in view of the denial interposed by defendant, "I am unable to say, because we are not informed where this right of way is."    This did not nullify the judgment or plaintiff's legal rights.    But the court said, "In order that this judgment may be enforced, and the right which it gives preserved, we must delay the remedy until we find the fact."    The court thereupon ordered the reference, not to determine any right of the parties in the judgment, but solely to determine a fact upon which a remedy authorized by the judgment might operate.    This is the usual practice, and upon the coming in of the report, the fact being found, the court applied the remedy appropriate to such cases.    The difficulty which arose in this case was in the allowance by defendant of the entry of judgment in the form in which it now appears.    If she is entitled to any relief, it must come from a modification of the judgment entered, and this can only be accomplished by opening the judgment, and, if erroneous, establishing the correct right of way.    I find nothing in the proceedings before the referee which calls for the setting aside of the report, while the penalty imposed was compensatory only for the expenses incurred.    I find no error.

The orders appealed from should, therefore, be affirmed, with $10 costs and disbursements.

CULLEN, J., concurs with HATCH, J.

BARTLETT, J. (dissenting).    I dissent from the conclusion reached by the majority of the court.    The judgment did not locate the right of way.    At the time the action was brought the defendant had put up fences across the whole width of her property, so that it was plain that she was then obstructing the right of way, whatever might be its true route.    When the contempt proceedings were instituted, however, those fences had been in part removed, so that there was available to the plaintiff an unobstructed way two rods in width over the property of the defendant.    The plaintiff, nevertheless, has succeeded in having a fine imposed on the defendant, because, although she affords him a two-rod right of way, she still prevents him from passing along the particular route which he claims was used before the commencement of the action.    I agree that, if the judgment had established his right to the use of this particular line of travel, she could properly be punished for obstructing it; but where the judgment omits to locate or define the route I do

not think it can be made definite and certain in this respect by affidavits or depositions taken in contempt proceedings, so as to constitute a basis for inflicting punishment upon the defendant. A decree cannot be broadened in this manner for such a purpose. If the plaintiff wanted his right of way definitely fixed, he should have alleged its location in the complaint, and prayed judgment accordingly; and then the defendant, unless she admitted his claim as thus specifically stated, would have had an opportunity to try the issue of location as one of the issues in the action, instead of having it determined on affidavits in a proceeding the purpose of which virtually was to find out what the judgment meant.

I think the order appealed from should be reversed.